UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERNON STANCUNA,<br><br>*Plaintiff*,<br><br>v.<br><br>CHRISTOPHER IOVENE,<br><br>*Defendant*. | Civil No. 3:08-cv-30 (JBA)<br><br>March 15, 2018 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, Plaintiff Vernon Stancuna claims that after filing a lawsuit against Defendant Christopher Iovene for false arrest, Defendant Iovene falsely arrested Plaintiff without probable cause in violation of the Fourth Amendment, and in so doing also retaliated against Plaintiff for exercising his First Amendment right of access to the courts. Defendant moves [Doc. # 154] for summary judgment on both claims. For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Amendment claim and GRANTS Defendant's Motion as to his First Amendment retaliation claim.

**I.    Summary Judgment Record**

**A.    Undisputed Facts**

Plaintiff is a resident of Wallingford, Connecticut and Defendant is an officer in the Wallingford Police Department. (Compl. [Doc. # 1-2] ¶ 1-2.) On November 21, 2006, the New Haven *Register* reported that Plaintiff had filed a lawsuit against Defendant for false arrest. (*Id.* ¶ 3.) Around 7:00 p.m. that evening, during his 4:00–11:00 p.m. patrol shift, Defendant pulled his

cruiser up to a stop sign en route to a house alarm call, and saw a gray Mercedes Benz (belonging to Plaintiff) stopped in front of him. There were children in the back seat and a woman passenger in the front. Both Plaintiff and Defendant then proceeded from the stop sign straight on to Quigley Road, Wallingford. Shortly thereafter, Defendant activated his police cruiser overheard strobe lights, Plaintiff immediately stopped, and Defendant swerved to avoid hitting Plaintiff's car. Defendant radioed for back up, exited his cruiser, and approached the driver's side window. Defendant recognized Plaintiff, had knowledge of the *Register* article, and signaled him to roll down his window. Plaintiff instead opened the rear and front driver's side doors and gave Defendant the requested paperwork through the opened driver door. He then remained in the car as Defendant directed, and began to make a call on his cell phone. After a lieutenant and second police officer arrived, all three walked to the passenger side, and the Lieutenant explained to Plaintiff that he was being issued a ticket for talking on a cell phone while driving and told him he was free to leave.

Plaintiff later pled not guilty and was tried before a state court Magistrate and found guilty on October 18, 2007. He moved for a trial *de novo* but none was ever scheduled. Through counsel, on December 1, 2008, Plaintiff requested that this case be nolled. This request has never been acted on. In September 2014, a new prosecutor nolled Plaintiff's case together with the cases of other defendants who had requested *de novo* trials that had never been scheduled.

### B. Disputed Facts

According to Defendant, the "Mercedes hesitated at the stop sign for a longer-than-normal period of time, which caused me concern; I believed that the driver might be under the influence of alcohol or drugs or lost[.]" (Ex. A (Iovene Aff.) to Def.'s Mot. Summ. J. [Doc# 154-3] ¶ 12.) Defendant further attests that while stopped at the stop sign, he "observed the driver of the

2

Mercedes lift a cell phone up with his right hand, turn to his right and look at the phone[.]" (*Id.* ¶ 13.) According to Defendant, as he continued to drive towards the location of the house alarm call, the "Mercedes was traveling at [a] slower-than-normal rate of speed and kept veering to the right" and he "also observed the driver of the Mercedes lift up the cell phone several times with his right hand, turn to his right and look at the phone[.]" (*Id.* ¶ 15-17.)

In opposition, Plaintiff denies in a signed and sworn (but not notarized) affidavit that he stopped at the stop sign for a longer than normal period of time and that "as a cautious driver at a stop sign, I was looking in all traffic directions before proceeding through the stop sign." (Stancuna Aff. [Doc. # 169-1] ¶¶ 5-6.) Plaintiff denies that he "was traveling at a slower than normal rate of speed or that [he] was veering to the right." (*Id.* ¶ 7 (emphasis in original).) Plaintiff denies that he was using his cell phone "at all prior to being pulled over by" Defendant. (*Id.* ¶ 8.)

The parties agree that Plaintiff never held the cell phone to his ear, (Parties' L.R. Stmts. ¶ 12), but Defendant claims that it "looked like [Plaintiff] was dialing or searching for a number on the phone[,]" (Iovene Aff. ¶ 18). Defendant claims that after he "activated [his] overhead strobe lights [which automatically prompted the dash cam in his police cruiser to begin recording], the Mercedes immediately slammed onto its brakes, causing the vehicle's front end to dip forward and the rear end to lift[,]" and that Defendant "applied [his] brakes and swerved into the north bound lane to avoid hitting the Mercedes[.]" (Iovene Aff. ¶¶ 22-23.) Defendant claims that he "believed that the driver might be intoxicated, as based upon [his] training and experience, such sudden stops are an indicative [sic] of driving under the influence[.]" (*Id.* ¶ 24.) Plaintiff denies that he was intoxicated or driving under the influence. (Stancuna Aff. ¶ 9.)

Defendant radioed in his stop and backed his cruiser up behind the Mercedes. (Parties' L.R. Stmts. ¶ 19.) Defendant claims that at this point, before he exited his cruiser and approached the

3

Mercedes, he "did not know who owned, or was operating, the Mercedes[.]" (Iovene Aff. ¶ 26.) Earlier that day, Defendant had become aware of an article in that day's edition of the New Haven *Register*, which reported that Plaintiff was suing him. (Parties' L.R. Stmts. ¶ 25.)

Defendant testified that Plaintiff responded to Defendant in an "irrational and irritated manner" (Def. Dep. at 107), including opening both driver side doors and saying "this is how it's gonna be, you want to harass me, we know you're a dirty cop[,]" (Parties' L.R. Stmts. ¶ 28.) After Plaintiff gave Defendant his paperwork, (Parties' L.R. Stmts. ¶¶ 24, 29), Plaintiff stayed in his car as Defendant ordered and began calling someone on his cell phone, (*id.* ¶ 31). Defendant shut both of the Mercedes' doors and called for a supervisor to respond to the scene as he walked back to his cruiser. (*Id.* ¶ 32.) Officer Jenni Lee Fratellenico arrived as a backup officer and remained on the scene. (*Id.* ¶ 33.) Defendant remained in his cruiser with his dash cam recording until Lieutenant William Wright arrived on scene. (*Id.* ¶ 34.) As Defendant was explaining the events to Wright, his dash cam video tape ended. (*Id.* ¶ 35.) However, this tape recorded none of Plaintiff's conduct leading to the stop. Fratellenico then turned on her dash cam, which remained running until Plaintiff was permitted to drive away. (*Id.* ¶ 36.) Wright, Fratellenico, and Defendant walked to the passenger's side of the Mercedes, where Wright explained to Plaintiff that he was being issued a ticket for the cell phone violation and that, if he got a hands-free device, the court would suspend the ticket. (*Id.* ¶ 38.)

According to Defendant, Plaintiff then responded with disparaging remarks, which Plaintiff denies, but his provocative commentary is recorded on the video. (Iovene Aff. ¶ 45; Stancuna Aff. ¶ 10.) Wright told Plaintiff he was free to leave. (Parties' L.R. Stmts. ¶ 40.) According to Defendant, Fratellenico's dash cam shows that Plaintiff then sped off, which Plaintiff denies.

4

(Parties' L.R. Stmts. ¶ 41; Stancuna Aff. ¶ 11.) The dash cam records the sound of a vehicle accelerating rapidly.

Plaintiff declined to pay the ticket and instead pleaded not guilty, appearing for trial on October 18, 2007, at which the magistrate found Plaintiff guilty and fined him $100. (Ex. C (Pl.'s Dep.) to Def.'s Mot. Summ. J. [Doc. # 154-5] at 68:12-69:9, 70:2-4.)

Thereafter, Plaintiff, through his attorney, filed a request for a trial *de novo*. (Parties' L.R. Stmts. ¶ 44.) Plaintiff's file was given to another member of the state judicial branch for scheduling for a *de novo* trial, but it was never given a trial date. (*Id.* ¶ 45.) On December 1, 2008, Plaintiff, through his attorney, filed a request to have the case construed to have been nolled, but the request was never acted upon by the court. (*Id.* ¶ 46.) In September 2014, State's Attorney Turcotte nolled Plaintiff's case. (*Id.* ¶ 47.) Turcotte testified that after Plaintiff's request for a *de novo* trial, "[a] long period of time lapsed[,]" and that when Plaintiff's file, "along with a number of other files for scheduling of . . . De Novo trials . . . were brought to my attention, I reviewed the files and felt that it was not appropriate to prosecute those cases based upon the amount of time that had past, [sic] and I entered a nolle." (Ex. G (Turcotte Dep.) to Def.'s Mot. Summ. J. [Doc. # 154-9] at 31:1-10.) Turcotte did not notify Plaintiff or anyone else that he had nolled the cases. (*Id.* at 31:13-17.) Turcotte testified that he had acted on the files because the clerk "asked [him] to review them[.]" (*Id.* at 31:19-23.) Turcotte further testified that he "didn't decide the nolle on the merits of [Plaintiff's] case . . . [but] based upon the time that had lapsed[.]" (*Id.* at 79:3-10.) He testified that the nolle was not based on Plaintiff's innocence, was not based on a lack of reasonable grounds for prosecution, and that the prosecution was not terminated in any manner indicating that Plaintiff was not guilty. (*Id.* at 130:21-131:5.)

Lastly, Defendant cites to record evidence that Plaintiff has continued to publish articles, file lawsuits against the Town of Wallingford, its employees and police officers, and file civilian complaints against the Town of Wallingford and various Town employees. (Def.'s L.R. Stmt. ¶ 52; Pl.'s Depo. pp. 72-73.) Plaintiff, citing no record evidence, responds as follows:

> Admitted that I was able to overcome [Defendant's] threats, intimidation, harassment and unlawful actions with respect to the violation of my civil rights to be able to publish articles, assert claims against evildoers when necessary to protect myself from further abuse, harassment and intimidation #never again, # me too, # Boston strong.

(Pl.'s L.R. Stmt. ¶ 52.)

### C. Procedural Background

Plaintiff initiated this case represented by counsel. On August 25, 2016, Plaintiff's counsel moved [Doc. # 65] to withdraw, noting that Plaintiff "has expressly instructed the undersigned to file this motion as he wishes to represent himself henceforth." (Mot. Withdraw Appearance.) On September 8, 2016, the Court granted Plaintiff's motion, absent objection. ([Doc. # 74].) Along with his Motion for Summary Judgment, Defendant provided Plaintiff with a copy of the notice to *pro se* litigants regarding summary judgment that is required under Local Civil Rule 56(b). ([Doc. # 154-12].)

Notwithstanding that notice, Plaintiff failed to comply with Local Civil Rule 56(a)2's requirement that a party opposing a motion for summary judgment shall file a Statement of Facts in Opposition to Summary Judgment that admits, denies, and/or objects to the facts presented in Defendant's Statement of Undisputed Material Facts, and which must cite to admissible evidence, such as deposition testimony or affidavits, a failure extensively documented by Defendant in his Reply to Plaintiff's Objection to the Motion for Summary Judgment. ([Doc. # 160].)

On February 21, 2018, the Court gave Plaintiff further notice of this failure, and in light of his status as a *pro se* litigant, permitted him an opportunity to cure the deficiency by filing a Statement of Facts in Opposition to Summary Judgment by March 2, 2018, warning him that his failure to timely comply would "result in the Court deeming him to have admitted the facts as presented by Defendant and deeming him to have failed to oppose the Motion for Summary Judgment." (Order to Pl. [Doc. # 168] at 2.) This Order emphasized that any factual assertions or denials in the Statement of Facts needed to cite to "specific pages in his deposition transcript and/or to specific paragraphs in a sworn affidavit." (*Id.* at 1.) On February 26, 2018, Plaintiff filed a Statement of Facts in Support of his Objection to the Motion for Summary Judgment [Doc. # 169] together with his affidavit, and a previously-filed letter to Plaintiff from James E. Baranowski that purports to serve as an expert report.

In response, Defendant protests that Plaintiff's supplemental Statement of Facts still fails to comply with Federal Rule of Civil Procedure 56 and Local Civil Rule 56 and contends that therefore all facts asserted in Defendant's Rule 56(a)1 statement should be deemed admitted. (Reply to Pl.'s L.R. Stmt. [Doc. # 170] at 1.) Defendant claims that "the attached affidavit is incomplete, as it only contains the first page[,]" (*id.*), but the affidavit [Doc. # 169-1 at 2] contains a second signature page. Defendant also contends that while Plaintiff "claims that he did not make disparaging remarks to the officer and did not speed off . . . the video clearly contradicts his affidavit in this regard." (*Id.*) These disputed facts—which occurred after the traffic citation was issued and as Plaintiff was being told that he was free to go—go to credibility for jurors' consideration of Plaintiff's Fourth Amendment claim.

## II. Discussion

### A. <u>Legal Standard</u>

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

### B. <u>Fourth Amendment False Arrest Claim</u>

Plaintiff claims that he was stopped, detained and arrested in violation of the Fourth Amendment to the U.S. Constitution. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. And "[t]he temporary detention of a person when the police have stopped h[is] vehicle, regardless of its brevity or limited intrusiveness, constitutes a seizure for Fourth Amendment purposes, and thus must not be unreasonable." *Gilles*

*v. Repicky*, 511 F.3d 239, 244–45 (2d Cir. 2007) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)).

"In analyzing claims alleging the constitutional tort of false arrest, 'we have generally looked to the law of the state in which the arrest occurred.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citations omitted). In Connecticut, "false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another[,]" and "the applicable law for [both claims] is identical[.]" *Id.* (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)) (internal quotation marks and other citations omitted).

Defendant argues that Plaintiff's Fourth Amendment claim fails for two reasons: first, because there was reasonable suspicion for the traffic stop and probable cause for a custodial arrest, and second, because Plaintiff cannot show that his prosecution was favorably terminated.

"[P]robable cause is a complete defense to claims of false imprisonment and false arrest." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007). And where the alleged Fourth Amendment violation occurs in the context of a traffic stop, reasonable suspicion that a traffic violation has been committed can also justify the reasonableness of the stop. *See United States v. Stewart*, 551 F.3d 187, 192 (2d Cir. 2009).

Defendant argues that he had reasonable suspicion and probable cause to believe that Plaintiff was committing various traffic infractions, including driving while using a mobile electronic device in violation of C.G.S. § 14-296aa (b)(1), driving at "such a slow speed as to impede or block the normal and reasonable movement of traffic" in violation of C.G.S. § 14-220 (a), veering out of his lane in violation of C.G.S. § 14-236, impeding traffic in violation of C.G.S. § 14-240 (b), and failing to operate his vehicle "with reasonable safety and without interfering with other traffic" in violation of C.G.S. § 14-243 (a).

9

In his affidavit, as described above, Plaintiff denies having (1) stopped at the stop sign for a longer than normal period of time, (2) traveling at a slower than normal speed, (3) veering out of his lane, and (4) using his cell phone at all prior to being pulled over by Defendant. Defendant, for his part, claims that Plaintiff did all of these things, but Defendant directs the Court to no supporting evidence beyond his own testimony, (Def. Dep. at 83), and his argument that the testimony of Plaintiff could not be credited. The only other record evidence—other than the affidavits and deposition testimony of the parties—relating to the existence of probable cause and reasonable suspicion for the stop are the dash cam videos, which began recording *after* Defendant initiated the traffic stop. They do not, therefore, shed light on whether Defendant had reasonable suspicion to initiate the traffic stop.

Defendant's dash cam opens with Defendant exclaiming to himself "You must've lost your friggin' mind!" as he maneuvers his car forward and back to stop behind Plaintiff, while calling in the stop. (Ex. D (Iovene Dash Cam) to Def.'s Mot. Summ. J.) The video does not show Plaintiff engaged in any of the conduct that Plaintiff denies engaging in. With respect to Plaintiff's alleged "sudden braking," in deposition Plaintiff testified that Defendant was "right behind me, like right on my bumper . . . one foot from my bumper." (Pl. Dep. at 65.) A reasonable jury could infer that Defendant's exclamation and vehicular maneuvering were caused by Plaintiff having braked too suddenly but also could conclude that Defendant's vehicle maneuvering was necessitated not because Plaintiff braked too suddenly but because Defendant had been following so closely behind Plaintiff. The parties agree that Plaintiff braked after, and in response to, Defendant's activation of his overhead lights.

Defendant also contends that Plaintiff's conduct during the traffic stop further supports reasonable suspicion. Defendant maintains that "[i]t is undisputed that Stancuna was

10

argumentative, agitated and engaged in odd behavior during the traffic stop – opening the rear and front driver's side doors when asked to roll down the window[,]" which provided Defendant "with another layer of reasonable suspicion." (Def.'s Mot. Summ. J. at 9.) This conduct is necessarily part of the body of evidence a fact finder could consider in determining whether reasonable suspicion existed for the *Terry* stop and detention.

There is no dispute that the dash cam video shows that Plaintiff (or Plaintiff and someone else in the car) opened both the driver's side front and back doors after Defendant walked up to the driver's side window. It is also uncontested that Plaintiff at this point called Defendant "a dirty cop." But the video shows that Plaintiff opened the front door through which he gave Defendant his paperwork. At no point did Plaintiff leave the vehicle, and after Defendant closed both doors, Plaintiff did not reopen them. The parties agree that Defendant told Plaintiff to stay in the car, and that Plaintiff complied and began calling someone on his cell phone. Plaintiff's otherwise compliant conduct must also be weighed by the fact finder in its consideration of whether Defendant lacked reasonable suspicion.

Accordingly, the record demonstrates a number of genuine disputes of material fact that must be resolved by a fact-finder weighing the competing evidence and testimony in order to determine whether Defendant had reasonable suspicion to stop and detain Plaintiff,[1] and summary judgment is inappropriate on Plaintiff's Fourth Amendment claims.

---

[1] Because the Court finds that there is a genuine dispute of material fact as to whether Defendant had reasonable suspicion, which requires less than a showing of probable cause, the Court does not reach Defendant's argument that there was probable cause sufficient for a custodial arrest.

Defendant claims entitlement to qualified immunity on the traffic violation Fourth Amendment claim. Defendant's qualified immunity argument, however, is premised on his argument that the facts supporting his claim of reasonable suspicion are undisputed. They are not. As the Court concludes that there are genuine issues of material fact as to whether Defendant had reasonable suspicion to make the traffic stop, Defendant's qualified immunity defense must be rejected, without prejudice, at this stage until factual determinations related to the existence of reasonable suspicion are made by a jury.

Defendant also argues that Defendant is entitled to qualified immunity because there is no clearly established law "that multiple motor vehicle violations *would not* provide an officer with reasonable suspicion . . . [or] that being argumentative, agitated and engaging in odd behavior during a traffic stop *would not* provide the officer with reasonable suspicion." (Def.'s Mot. Summ. J. at 11-12.) This argument is misplaced because Plaintiff makes no such claim, only that there *were* no multiple motor vehicular violations, as a matter of disputed fact. Accordingly, Defendant's Motion for Summary Judgment on the basis of Defendant's qualified immunity is denied without prejudice.

Finally, Defendant argues that Plaintiff's Fourth Amendment claim fails because Plaintiff cannot show that his criminal case was terminated in his favor. In order for a plaintiff to prevail on a Section 1983 claim for false arrest under Connecticut law, the plaintiff must show that the prosecution for that arrest terminated in the plaintiff's favor. *Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992). And a *nolle prosequi* can constitute a favorable termination, so long as the plaintiff demonstrates that it was entered under circumstances indicating "an abandonment of the prosecution without request from or by arrangement with him." *See v. Gosselin*, 133 Conn. 158,

160 (Conn. 1946) (citation omitted);[2] *see also Frey v. Maloney*, 476 F. Supp. 2d 141, 147 (D. Conn. 2007) (same) (collecting cases); *DeLaurentis v. City of New Haven*, 220 Conn. 225, 251 (1991) (to satisfy favorable termination element in vexatious suit action, plaintiff need not establish "an adjudication on the merits in his favor" or an affirmative showing "that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration." (citations omitted)); *Roberts v. Babkiewicz*, 582 F.3d 418, 421 (2d Cir. 2009) (noting that "[t]majority of cases from Connecticut courts interpret Connecticut law so that a nolle prosequi satisfies the 'favorable termination' element as long as the abandonment of the prosecution was not based on an arrangement with the defendant." (citation omitted)); *cf. Spak v. Phillips*, 857 F.3d 458, 463 (2d Cir. 2017) (as a matter of federal common law, "a *nolle prosequi* constitutes a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues.").

While the record reflects that Plaintiff originally requested that his case be nolled, the record is clear that that request was not acted upon, and that the prosecutor much later decided to nolle Plaintiff's case without acting upon any request by the Plaintiff or in any sort of arrangement with him. The uncontroverted deposition testimony of the prosecutor reflects that the case was nolled six years after Plaintiff requested a new trial. These facts demonstrate that the State abandoned the prosecution as not appropriate considering the age of the case and the nature of the infraction, (Turcotte Dep. at 31), without regard to any request from Plaintiff, and so as a

---

[2] The District of Connecticut cases holding otherwise did not apply *See v. Gosselin* and instead cited to Second Circuit authority applying *New York* law. *See, e.g., Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 171 (D. Conn. 2003) (quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980).).

matter of Connecticut law, Plaintiff's criminal proceeding was terminated in his favor. Accordingly, Defendant's Motion for Summary Judgment lacks merit on this basis, and for this and the foregoing reasons, the Court must deny Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Amendment claim.

### C. First Amendment Retaliation Claim

Plaintiff also claims that Defendant retaliated against him for exercising his First Amendment right of access to the courts. "In order to state a [First Amendment] retaliation claim, we require a private citizen to show: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (internal quotation marks and citation omitted).

Plaintiff undisputedly has a protected interest in being permitted to seek recourse in the courts for alleged violations of his civil rights by police officers, and given the close temporal proximity between Defendant's knowledge of the newspaper report on Plaintiff's lawsuit against Defendant and Defendant's stop, detention, and issuance of a citation to Plaintiff that very same day, a reasonable jury could conclude that Defendant's actions were motivated or substantially caused by Plaintiff's exercise of that right. There is, however, no evidence in the record that suggests that Defendant's actions effectively chilled the exercise of Plaintiff's First Amendment rights, a fact that Plaintiff concedes in paragraph 52 of his Local Civil Rule 56(a)2 statement, as described above. Even giving Plaintiff latitude as a *pro se* litigant, he is bound by his concessions, and the record of evidence demonstrates that he cannot satisfy this element of his claim. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim.

### III. Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Amendment claim and GRANTS Defendant's Motion as to his First Amendment retaliation claim.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 15th day of March 2018.